21-6081 Lewis v. City of Edmond. Ms. Terry, are you ready to begin? Good morning, Your Honors. I'd like to reserve three minutes, if I may. We'll see I represent Police Officer Denton Sherman, who is challenging the District Court's denial of qualified immunity. From the outset, I'd like to make clear that this appeal is not about the District Court's fact-finding. We accept that the Court found undisputed facts on the record, and we accept that the disputed facts must be construed in the light most favorable to Mr. Lewis. We also accept, for purposes of this appeal only, that the Court determined a jury could find the shooting of Mr. Lewis violated the Fourth Amendment. But the review is de novo, and although Officer Sherman is the appellant, the burden remains on Mr. Lewis to establish that the conduct asked down by the trial court, and as alleged by Lewis, violated a clearly established right. As you know, the controlling precedent must be close would understand that what he was doing was unconstitutional, and the precedent must, existing precedent, must compel the conclusion that Officer Sherman acted reasonably without debate. We do not believe this burden has been met, and we believe that the trial court erred in so concluding. Counsel, let me ask you this question, if I could. Sure. In looking at the has to be supportive in the record, if it's not, then we've got a problem. But is the only testimony in the record against your client, that of the experts and the experts finding, is that the testimony that the District Court had in favor of opposing counsel? Yes, as for the disputed facts that are at issue, it is based on the experts' opinions, Your Honor, yes. And your position in regards to, if that's the only testimony that they have, whereas you had an eyewitness testimony, what's your concept and thought in regards to that? Well, Your Honor, we did challenge the expert, and the judge did not exclude that testimony, so we do believe that that testimony is admissible. Now, we don't think it's as reliable as eyewitness testimony, certainly, but as far as the findings of fact, Your Honor. You're bound by that. We are. All right. Thank you, Counsel. Judge McHugh, did you have a question? Let me ask you. I do. You said that you're accepting all of the facts as the District Court found that a reasonable jury could And yet, you seem to be arguing that Isaiah posed a threat to the officer when he shot. And I read the District Court as having determined that there was a genuine disputed fact as to whether Isaiah posed any level of danger requiring deadly force. Aren't you taking issue with the facts that the District Court determined a reasonable jury could find, and doesn't that divest us of jurisdiction? Respectfully, Your Honor, that is not exactly our position, and we do believe this court has jurisdiction. The District Court found that, as you know, three pages of the opinion set out undisputed facts in the record. Those undisputed facts talk about the turned towards Mr. Officer Sherman. The disputed facts are with regard to the manner in which Mr. Lewis approached. Mr. Lewis says, as argues, that he is windmilling. Officer Sherman says he was barreling. We accept for purposes of this appeal that Mr. Lewis was windmilling. The Mr. Officer Sherman says he gave additional commands. The expert says that is not supported by the evidence. We accept that for purposes of this appeal, a jury could find that no additional commands to stop were given. There is a dispute about the distance between Officer Sherman and Lewis when Officer Sherman fired. We accept for purposes of this appeal that the dispute, the distance is greater than two feet. Let me interrupt you. Do you accept that a reasonable jury could find that Isaiah posed no threat when he was windmilling? Your Honor, we accept that there is a question of fact about whether Isaiah Lewis posed a threat of serious bodily harm when he was windmilling. A reasonable jury could, based on those facts, according to the judge, according to the judge, could conclude that he was not a threat of seriously bodily harm at the time Officer Sherman discharged his second, third, fourth, and fifth shots. So, is it your position that that it is not a violation of Mr. Lewis's rights if he did not pose a threat and yet was shot? It's our position that under the particular circumstances of this case, although a reasonable jury could find that Officer Sherman violated Mr. Lewis's rights at that moment, it is our position that the extant case law of this jurisdiction did not inform Officer Sherman that when he fired he was violating the law because the circumstances of this case are not sufficiently similar to the circumstances of other cases in this district regarding the use of force at that moment. Counsel, you distinguished between the first shot and the second, third, fourth, and fifth shot. I did, Your Honor. Did the district court say that there was sufficient evidence to show a threat for the first shot? Your Honor, he didn't use those words, but we certainly believe that is what he found. Nonetheless, I will direct you to paragraph to page 16 of his opinion. There is a paragraph on that page that says that a reasonable jury could conclude that after the first shot, Mr. Lewis no longer posed a threat. So, why didn't, what confuses me is, did the district court say that your client was entitled to qualified immunity with respect to the first shot? He did not use those words, no, and he denied the qualified immunity, but he did make a distinction and said that he believed a reasonable jury could find that after the first shot, the subsequent shots were unreasonable. I will tell you that we certainly make that distinction because the district court did, but it is also our position that all of the shots, even if they were unreasonable and therefore violated Mr. Lewis's rights, that was not clearly established by case law that was sufficiently similar to place Officer Denton on notice of that. Well, isn't it clear in our case law that you can't shoot someone once they're clearly disabled and can't physically pose a threat to you? It is, Your Honor, but under the facts of this case, as found by the district court and even construed, those three weren't readily apparent that Mr. Lewis was subdued. It was not, they were confined quarters, he was still coming, windmilling is the word, and that invokes certain images in my mind and I'm sure yours about what was coming at Officer Sherman. He was advancing as the court made notes, factually found. It's absolutely clear that Mr. Sherman continued to advance, excuse me, I did that again, Mr. Lewis continued to advance at Officer Sherman as Officer Sherman backed up. They were in a very combined space. I'd like you to look at the dimensions of that space there. So, and I will tell you, I'm a little confused, how could there be any finding effect with respect to what happened after the first shot? Do we know for sure that he wasn't disabled? Your Honor, what we know is that after the first shot, he was continuing to approach and advance on Officer Sherman. We know that just because of Sherman's testimony? No, Your Honor, we know that because of all the shots were in the hallway and the evidence is undisputed that Mr. Lewis progressed from the living room through that hallway and ended up at the front door and that Denton Sherman was backing up. So he is still advancing towards Denton Sherman as Denton Sherman is backing up and he ultimately comes to rest at the very front door. If you look at the diagram, which is an exhibit in the underlying briefs, he comes and rests at the very front door and having started in the living room and advancing the entire time. So it is not, it is absolutely undisputed and the district court made that clear. Also in his fact findings, that is undisputed that Lewis is still advancing on Sherman after the first shot, that Sherman is backing away from Lewis, that all four shots were in the entryway in this confined hallway entryway and that Lewis continues to advance and ends up at the front door. Those fact findings were made clear by the court. I thought the district court in viewing his order that he said after the first shot that it became clear that there was a excessive use of force after the first shot. I believe that's what the district court said in his ruling, didn't he? No, your honor. What the district court said is there is a fact question about whether the second, third, fourth, and fifth shots would have been unreasonable and that a jury could conclude that the use of force was unreasonable after the first shot. Not that it was. Okay, then that again confuses me because I go back to what Judge McHugh asked on the basis of the facts that you're stipulating to. Where's our jurisdiction? We're not challenging the finding that a jury could conclude that the second, third, and fourth, and fifth shots were unreasonable. Our challenge is based on the case law of this jurisdiction and the comparator cases that did not, in our opinion, clearly establish a right at issue in circumstances that are particularized as to what Officer Sherman was facing. The U.S. Supreme Court has made clear about the particularized assessment of the totality of the circumstances. Judge Russell relied on Allen and Ceballos. Allen and Ceballos are very clearly escalation cases, very clearly. Those cases stand for the principle that an otherwise constitutionally acceptable use of force when intertwined with an escalation that is either reckless or deliberate could create an unconstitutional use of force. That is not what happened here, and Judge Russell absolutely, Your Honors, made that clear. He said Vox did not escalate. This is not an escalation case. Well, then let's talk about SMART. You bet, ma'am. In SMART, I mean, we've made it pretty clear if every reasonable officer would know that the person who has been shot at least once is no longer a threat, that you can't shoot him anymore. Would you agree with that? Yes, if every reasonable officer would know that the person who had been shot once. And here we have a finding by the District Court. Now, the jury may eventually disagree with the District Court, but we've got a finding by the District Court that after the first shot, that the jury could find that every reasonable officer would know there's no need to shoot him anymore. I mean, in order for you to prevail on the qualified immunity, we would have to overturn that factual finding, wouldn't we? No, ma'am. This is an assessment of whether the case law, for instance, SMART is one, whether the case... Okay, let me interrupt. Are you then telling me that if a person is incapacitated on the ground and the officer shoots them four, five, six times more, after seeing that they're incapacitated, that we don't have clearly established law that says you can't do that? No, ma'am. I agree that that is the holding of SMART, and SMART is very clear about that, but Mr. Lewis was not incapacitated on the ground. There is no comparator case in this district that suggests that under the facts, even as construed towards Mr. Lewis, who is windmilling, continuing to approach, that having... And by the way, Officer Sherman, we have to take the totality of the circumstances, and Sherman has witnessed three tases, non-lethal force to be ineffective, and has witnessed Lewis pummeling his partner who has fallen to the ground before Sherman turns on him. There is no case in this jurisdiction, and I would submit to you that we could find anywhere, that under circumstances like that, that the use of force in this circumstance was clearly established as unreasonable, and that is the challenge here, is that the case law does not sufficiently inform Officer Sherman, given the circumstances at issue in this case, the totality of them, and what Officer Sherman knew and witnessed, and what he was experiencing, that they are not sufficient comparators. The two cases that were relied on by the district court were escalation cases, and the district court in this case specifically rejected the notion of escalation. So, let me see if I'm understanding your position. After the first shot, a jury could find that Mr. Lewis was incapacitated, but Mr. Lewis was still coming at the officer in a confined area. Yes, sir. And you're saying, in that circumstance, there's no clearly established law saying that in that circumstance, it's a violation of the Fourth Amendment to fire further? What the district court did not, the district court didn't say that after the first shot, a reasonable jury could find Mr. Sherman was incapacitated. That is not what the district court said. In fact, he said the opposite. After the first shot, it is undisputed that Mr. Lewis continued to approach Officer Sherman and continued to... The word is incapacitated, but that he didn't pose a threat. That he didn't pose a threat. A jury could find that, but the factual evidence is undisputed that he is still approaching Officer Sherman in a confined space. He is still windmilling, because we have to assume the nature of his conduct at that point was windmilling as opposed to barreling, and that he is still advancing on Officer Sherman and continues to advance until the fifth shot is fired at the very, very threshold of the door is where Mr. Lewis comes to rest. Those facts are undisputed. And so... And from those facts, you conclude he was still a threat. Officer Sherman concluded that. My point is this, Your Honor. The case law has to establish under the particularized conduct at issue that Officer Sherman knew he was violating someone's constitutional rights by continuing to fire. There are no comparator cases that establish this type of factual circumstance. Neither Allen nor Ceballos, and we're talking about the entire Penelope of the facts here, including failure to... The taser being used three times and witnessing the pummeling of Officer Box and then the immediate challenge to Mr. Sherman. There are no cases like that, that under these circumstances would then say to Officer Sherman, although you have fired a first shot and a jury could conclude that he was no longer a threat, under these circumstances, that is a violation of a constitutional, clearly established right. Ceballos, which is the linchpin that the case that the court relied upon here, and I will read you the established right in Ceballos. And this is directly from the court's opinion. It says here, the legal right at issue that an officer violates the Fourth Amendment when his or her need for lethal force. That is not at issue here. This is not an escalation case. The district court soundly rejected that argument. Or when the officers rely on lethal force unreasonably as a first resort in confronting an irrational suspect who is armed only with a weapon of short-range lethality and who has been confined on his own property. That is this clearly established right at issue in Ceballos. It is, that right is not implicated by the facts and circumstances here. Ceballos did not place Officer Sherman on notice that continuing to fire in the circumstance that he was facing would have been a clear, clear violation of extant law. Thank you. You've gone several minutes over. Thank you. I understand. Thank you. Good morning, your, excuse me. Good morning, your honors, and may it please the court, Davie Rau, for Plaintiff Apelli Biggie Jo Lewis. Officer Sherman shot and killed Isaiah Lewis, a naked and visibly unarmed black teenager, in the throes of a mental health crisis. Sherman raised the defense of qualified immunity. The district court concluded that construing the facts in a light most favorable to the plaintiff, a reasonable jury could conclude that deadly force was not justified against the naked and unarmed Isaiah at the precise moment Sherman fired his weapon. Did the court find that with respect to the first shot? Your honor, it's our position that the best reading of the district court's opinion is that it denied qualified immunity as to all of the shots that hit. Well, how do you justify denying qualified immunity with respect to the first shot? Well, the, so. Is there any, is there any case that suggests that after someone has not been stopped by two or three laser shots and has overpowered, even though he's naked and unarmed, he's overpowered another officer and is coming at a smaller officer. He may not have a gun, but if he can overpower an officer, he can get a gun. Why is that not a threat or better? What case do you have suggesting that that's not protected? Okay. The best case, your honor, for that proposition is Sabayos. So in Sabayos, the victim was quote, acting crazy and on drugs and was armed with a bat and was approaching the officers and the officers shot him. And the court had said that the force in that case was unconstitutional and clearly so, and sent the case. But that was in large part because the officers precipitated the attack by Mr. Sabayos. Isn't that correct? There are two different holdings in Sabayos. The first holding is about precipitation, but the second holding in Sabayos is about the force itself. It said that the force in that case was not justified with an irrational subject armed with only a weapon of short-range lethality. Here, Isaiah was not armed at all. We know that there are two distinct holdings in Sabayos because we look at the district, I'm sorry, we look at the dissent in that case and the dissent very clearly separates out the precipitation facts and analysis from the use of deadly force. And so it's clear that Sabayos has two holdings. We're only relying on, and the district court only relied on the second with regard to the use of force itself. We're not relying on the precipitation facts of Sabayos. Unlike Sabayos, this was not a resort to deadly force in the first instance. This is a situation where in a confined space, Mr. Lewis had been tased I think three times and was still coming at the officers. So I don't really see that there's that big a parallel with Sabayos. And he's also not on his own property. I mean, Sabayos also makes the point that he was on his own property and rushed by the officers. So that sentence in Sabayos where it discusses the lethal force as a first resort and also the fact that he was on his own property, that was just the court describing the facts in Sabayos itself, but we know that for qualified immunity purposes, the facts do not need to be identical. This is not a case matching exercise. The question is whether the facts of Sabayos are close enough to put an officer on notice in this situation. And we think that they were because Sabayos, recall, was armed with a bat and Isaiah here was not armed at all. So as to the taser- Does it matter that in this case, the ultimate victim had prevailed over an officer and beaten an officer? Doesn't that make a difference? Mr. Sabayos had not used the bat, certainly not effectively against anyone. Isn't that- when you say close enough, the Supreme Court said it's got to be pretty close. Yes, that is a distinguishing fact from this case, but another distinguishing fact is that Sabayos was armed and Isaiah was unarmed. And I believe that those that an officer in Sherman's position would know, especially because Isaiah was, for an hour, not posing a threat to anyone, wandering around the woods, disturbed, certainly, but unarmed and naked and not posing a threat to anyone. It was only in that last minute, once the officers approached him, that he became aggressive at all. But the district court determined that the facts would- could lead a reasonable jury to conclude that Isaiah didn't pose a threat. I'd like to briefly go over those facts. There are five of them. First, he was naked and unarmed. Second, that Officer Sherman did not issue warnings before the last shots, that Isaiah was windmilling his arms, not barreling and not in a football stance, and that Isaiah didn't land a punch on Sherman. Finally, that the parties were at least three feet or more apart when the shots were fired. Judge Baldock, to your question, those disputed facts all do come from the expert report, and that's tragically because there's no one besides Sherman alive to tell the Isaiah side of the story. And so most of the facts do come from the expert report. A jury could look at the expert report testimony, which is very inconsistent with Sherman's version, and determine that self-serving testimony is not credible given the dispute of facts. There's one distinction here, that no warnings were issued doesn't come from the expert report, that comes from the testimony of Box and the homeowner, neither of whom said that they heard any warnings issued before the four shots, the four deadly shots were fired. Well, counsel, all that well is good, but let me read to you from the district court's order in this, because this is where I'm having trouble factually, and I'm looking at page 16, and the district court says, after weighing the gram factors, the court finds that when construing the facts in the light most favorable to the plaintiff, a reasonable jury could conclude that though force was clearly necessary, deadly force was not justified because the naked, unarmed Lewis, at the present moment, Sherman, discharged his firearm besides the case. He then says, explaining that the court's analysis these factors at the precise moment that the officer used force, construing those facts in plaintiff's favor, after Sherman first shot Lewis, Lewis no longer continued to barrel toward him, managing to punch him once in the face. A reasonable jury could conclude that after Sherman discharged his firearm once, Lewis no longer presented a threat of serious physical harm. Now, those are the facts that the trial court was looking at, and so I go back to where Judge Hartswood, what about the first shot? Is he entitled to qualified immunity in regard to the first shot, and if so, where does the rest of the shots come in? Okay, yes, I'll answer your question in two parts. So I think our position is that the, I'll admit the district court's opinion is a little difficult to parse in regard to this question, but I think the best reading is that, in fact, the district court denied qualified immunity as to all of the shots. At 507, you were reading from 505 at 507, the district court said a reasonable jury could conclude that no reasonable officer could have believed that the use of lethal force was lawful when Sherman encountered Lewis at 520 Gray Fox Run, and so that encompasses all of the conduct at issue here. Similarly, at 508. Well, even that's ambiguous. It might not have been apparent when they first encountered him, but after he attacked the other box, the other officer, the situation changed, and then it might be. Are you sure that he's, that the court is referring to everything that happened after the first shot? I mean, candidly, Your Honor, I'm not sure. I would say at 508, the district court's conclusion says that Sherman is not entitled to qualified immunity on plaintiff's excessive force claim against him and doesn't parse the shots. Similarly, at 505, the district court says at the time Sherman discharged, at the precise moment, plural, Sherman discharged his firearm, so I think it's possible to read it as to all of the shots, but Judge Beldock, to get back to your question, with regard at a minimum to the shots after the first one that hit Lewis, the district court was very clear that there are factual disputes, and taking the facts in a light most favorable to the plaintiff, a jury could determine that excessive force, that there was excessive force here, and that the line, and as to qualified immunity, the clearly established prom fancier, and as Judge McHugh pointed out, smart and rebus, and a long line of this court's cases hold that when a victim or a target is no longer posing a threat, the need for deadly force vanishes, and that continuing to shoot is itself a constitutional violation. And so at a minimum, as to the subsequent shots, the district court determined, and the law is thoroughly established, that this would have been a constitutional violation, and a jury needs to be the ultimate arbiters here of whether Officer Sherman should be held liable for his conduct. Let me ask you this, how important are the circumstances? I mean, the facts in smart were that the suspect was spread eagle, face down, on the ground, having already been shot, and it was clear there was no weapon because of how his hands were, and here the evidence is that whether he was windmilling or whatever that means, he had to stop. He was still coming at the officer, and he had already overpowered physically without a weapon another officer, despite being tased three times. Given the instructions from the Supreme Court about how important the factual circumstances are, doesn't this, isn't this case different than smart? So Judge McHugh, thank you for raising the question that I heard in my friend's presentation about the exact manner in which Isaiah continued to move toward Officer Sherman. Taking the facts in the light most favorable to us, although we're not disputing that he continued to advance, the favorable ruling, sorry, the favorable view of the facts is that he was shot and was certainly moving towards the door, but that was in an offer, an effort to get help. The homeowner hears Isaiah crying for help. We know that he had to crawl in a pool of his own blood to try to get out the door, and so viewing the facts, we're not disputing he was advancing in some sense, but the district court's determination was that this was not a threatening advance. This was an advance of someone who was mortally wounded and was trying to seek help. As to the question of clearly established that you raised, Judge McHugh, Fancher and Revis are both situations where the change from a threat to no threat happens very quickly. In Fancher, it's a matter of the victim being shot once and slumping over in the vehicle, and in Revis, it's a matter of the car grazing the officer, and so the officer is no longer in the line, in the vehicle's path, and so when the shots go into the side of the vehicle and into the back of the vehicle, we know that the officer was no longer threatened at the moment the shots were fired. That's similar to this case. The change between threat and no threat in these cases happens very quickly, but the question is one for a jury, whether Sherman ultimately should have perceived that the threat had passed. The district court determined that, in fact, a jury could conclude that, and so given the facts here, qualified immunity is inappropriate, as the district court found, and the testimony against the testimony of the expert witness and others as to what happened and weigh ultimately what they think did happen that afternoon at Gray Fox Run, and so for those reasons, we would ask this court to affirm the district court's denial of qualified immunity and if there are no further questions. Thank you, counsel. Thank you.